UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CHRISTINE WEBB and<br>JOSEPH WEBB,<br><br>        Plaintiffs,<br><br>v.<br><br>ETHICON, INC. and<br>JOHNSON & JOHNSON,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)   No.:   3:19-CV-461-TAV-DCP<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Christine Webb and Joseph Webb (jointly, "Plaintiffs") filed suit against Ethicon, Inc. and Johnson & Johnson (jointly, "Defendants"), alleging a plethora of claims arising out of the surgical implantation of a product (the "TVT-O") manufactured by Defendants to treat stress urinary incontinence in females. Before the Court are Defendants' motions for summary judgment [Doc. 44] and to exclude the case-specific opinions of Plaintiffs' expert witness Dr. Bruce Rosenzweig [Doc. 48], and Plaintiffs' motion to exclude the opinions of Ethicon's expert witness Dr. Harry Johnson [Doc. 58]. For the reasons set forth below, Defendants' motion for summary judgment [Doc. 44] will be **GRANTED IN PART** and **DENIED IN PART**; Defendants' motion to limit the case-specific testimony of Dr. Rosenzweig [Doc. 48] will be **DENIED**; and Plaintiffs' motion to exclude the opinions of Dr. Johnson [Doc. 58] will be **DENIED**.

## I. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted). That is, the nonmoving party must point to evidence in the record upon which a reasonable factfinder could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue of fact must be material, in that it might affect the outcome of the suit under governing law. *Id.*

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## II. BACKGROUND

On September 17, 2010, Christine was implanted with the TVT-O [Matson Dep. 12:9-12, 15:13-14, Doc. 45]. Following the implantation, Christine suffered from a myriad of symptoms, including pelvic pain and feeling the need to urinate but being unable to do so [*Id.* at 32:19-23; Christine Dep. 43:9-24, Doc. 44-1]. Attributing Christine's symptoms to the TVT-O, Plaintiffs commenced this multi-district litigation action in the Southern District of West Virginia against Defendants on July 12, 2012 [Doc. 1].

After several years of pretrial rulings, Defendants filed their motion for summary judgment on September 6, 2016, and, the parties filed their respective expert witness challenges [Docs. 44, 48, 58]. The instant action was transferred to this Court on November 13, 2019 [Doc. 92]. This Court stayed the action pending resolution of Defendants' motion for summary judgment, which is now ripe [Doc. 121].

3

Plaintiffs assert eighteen (18) claims against Defendants:

1. Count I – Negligence
2. Count II – Strict Liability – Manufacturing Defect
3. Count III – Strict Liability – Failure to Warn
4. Count IV – Strict Liability – Defective Product
5. Count V – Strict Liability – Design Defect
6. Count VI – Common Law Fraud
7. Count VII – Fraudulent Concealment
8. Count VIII – Constructive Fraud
9. Count IX – Negligent Misrepresentation
10. Count X – Negligent Infliction of Emotional Distress
11. Count XI – Breach of Express Warranty
12. Count XII – Breach of Implied Warranty
13. Count XIII – Violation of Consumer Protection Laws
14. Count XIV – Gross Negligence
15. Count XV – Unjust Enrichment
16. Count XVI – Loss of Consortium
17. Count XVII – Punitive Damages
18. Count XVIII – Discovery Rule and Tolling

[Doc. 14 p. 4–5]. Ethicon moves for summary judgment on all of these claims [Doc. 64 p. 1–2].

### III. ANALYSIS

#### A. Defendants' Motion for Summary Judgment

The parties agree Tennessee state law governs Plaintiffs' claims [Doc. 45 p. 5–6; Doc. 50 p. 2]; *see Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); *Derungs v. Wal-Mart Stores, Inc.*, 374 F.3d 428, 433 (6th Cir. 2004) ("When a federal court interprets state law, the substantive law of the state in which the district court sits must be applied." (citations omitted)).

### 1. Claims That Can be Dismissed at the Outset

As an initial matter, Plaintiffs have abandoned or failed to respond to Defendants' motion for summary judgment on several claims. Plaintiffs have specifically abandoned any claims premised on manufacturing defect, violations of consumer protection laws, and unjust enrichment [Doc. 50 p. 5–6]. As such, Counts II, XIII, and XV will be dismissed with prejudice.[1] *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." (citations omitted)); *Kline v. Mortg. Elec. Sec. Sys.*, 154 F. Supp. 3d 567, 572 (S.D. Ohio 2015) (dismissing with prejudice abandoned claims on motion for summary judgment); *see also Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (dismissing claim with prejudice on motion for summary judgment after recognizing that "[s]ummary judgment . . . is the procedural equivalent of a trial and is an adjudication of the claim on the merits" (citation omitted)).

Plaintiffs have failed to respond to Defendants' contention that Count IV of Plaintiffs' Complaint, "Strict Liability – Defective Product," is duplicative of Plaintiffs' other claims [Doc. 45 p. 17]. Indeed, Counts II, III, and V, already encompass the totality of strict product liability theories under which a plaintiff may assert a cause of action in

---

[1] Defendants claim that Counts I and XIV of Plaintiffs' Complaint assert claims for negligence and gross negligence premised on manufacturing defect and may therefore be dismissed [Doc. 53 p. 1]. There is no indication, however, that Plaintiffs' claims in this regard are premised only on a manufacturing defect [Doc. 1 p. 25–26; Doc. 14 p. 4–5]. As such, Counts I and XIV of Plaintiffs' Complaint will not be dismissed at this time.

5

that regard, so Defendants' argument is well-taken. *See Maness v. Boston Sci.*, 751 F. Supp. 2d 962, 967 (E.D. Tenn. 2010) (identifying "strict liability, defective design, defective manufacturing, [and] failure to warn]" as the theories of recovery in a Tennessee products liability suit). Accordingly, Count IV of Plaintiffs' Complaint will be dismissed with prejudice.

Plaintiffs additionally have failed to respond to Defendants' assertion that Count XVIII of their Complaint, a claim for "Discovery Rule and Tolling[,]" is not an actionable claim but rather simply a legal rule that potentially tolls the running of the statute of limitations [Doc. 45 p. 2 n.1]; *see Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) ("It is now well-established that, where applicable, the discovery rule is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." (citation omitted)). Defendants' position is accepted and Count XVIII of Plaintiffs' Complaint will also be dismissed with prejudice.

Finally, Plaintiffs have failed to respond to Defendants' contention that Plaintiffs' "claim" for punitive damages (i.e., Count XVII) is not a legitimate cause of action but rather a type of damages Plaintiffs may recover in conjunction with proving other claims [Doc. 45 p. 2 n.1]. Defendants' argument in this regard is also meritorious. *See Rotello v. Clayton Homes of Del., Inc.*, No. 3:03-cv-573, 2006 WL 2771018, at *2 (E.D. Tenn. Sept. 25, 2006) (In applying Tennessee law, "defendants are correct . . . that plaintiffs need only request punitive damage[s] as part of their complaint; it need not be pleaded as a

specific count. Therefore, plaintiffs' cause of action for punitive damages will be dismissed inasmuch as such a claim is not appropriately asserted as an independent count in a complaint. This ruling does not, of course, bar plaintiffs from seeking punitive damages in this case . . . ."). Per *Rotello*, Count XVII of Plaintiffs' Complaint will be dismissed with prejudice, but this ruling does not prevent Plaintiffs from seeking punitive damages in this case.

In sum, Counts II, IV, XIII, XV, XVII, and XVIII will be dismissed with prejudice.

### 2. Nature of TLPA

One other point must be clarified. As Plaintiffs assert a products liability action, the Tennessee Products Liability Act of 1978 ("TPLA") governs essentially all of Plaintiffs' remaining claims. *See Strayhorn v. Wyeth Pharm, Inc.*, 737 F.3d 378, 392 (6th Cir. 2013) ("The TPLA governs all of the plaintiffs' claims because the claims were brought for or on account of personal injury resulting from the design, warning, instruction, marketing, packaging, and labeling of [a product]." (citation omitted)). Defendants seem to believe the TPLA is a claim-subsuming statute and that most of Plaintiffs' claims here should be dismissed because the effect of the TPLA is to render any products liability claim by Plaintiffs as duplicative of a single TPLA claim [Doc. 45 p. 6–7, 13–15; Doc. 53 p. 10–12]. Defendants' argument, however, misapprehends the nature of the TPLA and how a party maintains various products liability claims in conjunction with that statute.

Even when a plaintiff asserts multiple claims that are "subsumed by the [TPLA]," a plaintiff is permitted to assert "various theories under a single TPLA claim." *Meadow v.*

7

*Nibco, Inc.*, No. 3:15-cv-1124, 2016 WL 2986350, at *1–2 (M.D. Tenn. May 24, 2016).

As this Court has explained:

> In enacting the TPLA, the [Tennessee] General Assembly created the first type of legislatively created legal duty described in *Rain*—a statute that provides a civil cause of action for its breach and provides a remedy for plaintiffs who suffer injuries caused by defective or unreasonably dangerous products. The TPLA also provides that a plaintiff may bring such causes of action under several different theories.

*Tilden v. Gen. Elec. Co.*, No. 3:11-cv-628, 2012 WL 1023617, at *6 (E.D. Tenn. Mar. 26, 2012) (citations omitted). Indeed, the TPLA itself recognizes a plaintiff's ability to seek liability based on multiple theories, as Tenn. Code Ann. § 29-28-105(c) expressly exempts plaintiffs from having to prove one of the elements of a claim under the TPLA in "an action based on express warranty or misrepresentation regarding the chattel."

Whether Plaintiffs bring multiple claims or one TPLA claim on multiple theories, the TPLA does not prohibit Plaintiffs from proving liability against Defendants under a variety of theories. What Plaintiffs have asserted as multiple "claims" can simply be viewed as multiple theories, elements of which must be proven even after satisfying the requisites of the TPLA. *See Carter v. Danek Med., Inc.*, No. 96-cv-3243-G, 1999 WL 33537317, at *6–7 n.7 (W.D. Tenn. June 3, 1999) (analyzing additional elements of negligent misrepresentation claim even after recognizing claim to fall within the TPLA). *See generally* 17 John A. Day, et al., *Tennessee Practice Series*, Tennessee Law of Comparative Fault § 9:2 (2018 ed. Aug. 2018 update) (outlining various kinds of products liability claims that require proof of additional elements once a plaintiff has satisfied the requisites of the TPLA).

8

Defendants' argument is really one of form over substance, and the dismissal of all of Plaintiffs' claims with instructions to file an amended complaint asserting one TPLA claim premised on multiple theories is unnecessary at this stage of the litigation. *Cf. Meadow*, 2016 WL 2986350, at *1–2 (dismissing Plaintiff's Complaint asserting multiple claims with instructions that Plaintiff is to file a new Complaint asserting "his various theories under a single TPLA claim").

### 3. Failure to Warn, Fraud, Fraudulent Concealment, Constructive Fraud, Breach of Express Warranty, and Misrepresentation Claims

Although Plaintiffs' claims are not subsumed by the TPLA, Plaintiffs must still satisfy the requisites of the TPLA, as essentially all of their claims are still governed by that statute. *See Strayhorn*, 737 F.3d at 392. To establish a prima facie products-liability claim under the TPLA, "the plaintiff must show: (1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (internal quotation marks omitted) (citation omitted). A plaintiff may demonstrate that a product was defective or unreasonably dangerous through direct evidence, circumstantial evidence, or a combination. *Id.* Tennessee law provides two (2) tests for determining whether a product is unreasonably dangerous:

> First, the product can be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Second, "because of its dangerous condition[, the product] would not be put

9

on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition."

*Strayhorn v. Wyeth Pharm., Inc.*, 887 F. Supp. 2d 799, 813–14 (W.D. Tenn. 2012) (citations omitted). "[T]he general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury." *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 805 (Tenn. 2001) (quoting *Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1427 (E.D. Tenn. 1991)). Finally, "the learned intermediary rule shields manufacturers from liability if they adequately warn physicians of [products'] risks; on the other hand, if manufacturers do not properly warn physicians, they can be held liable for a doctor's failure to adequately warn a patient." *Strayhorn*, 887 F. Supp. 2d at 814 (citation omitted).

Defendants attack Plaintiffs' ability to prove the causation element of their claims based on a failure-to-warn theory [Doc. 45 p. 8–11; Doc. 53 p. 2–6]. "All Tennessee law requires is evidence that a warning would have altered the doctor's actions and that the change in the doctor's actions would have averted the patient's injury." *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 531 (6th Cir. 2014). "The key inquiry is whether, 'had additional warnings been given, the plaintiff[] would not have sustained [her] injuries.'" *Smith v. Pfizer Inc.*, 688 F. Supp. 2d 735, 746 (M.D. Tenn. 2010) (quoting *King v. Danek Med.*, 37 S.W.3d 429, 452 (Tenn. Ct. App. 2000)).

Defendants' first argument is that Plaintiffs have no proof that Christine's implanting physician, Dr. Scott Matson ("Dr. Matson"), read or relied on the warnings that were given along with the TVT-O, which establishes, their argument goes, that had a proper

10

warning been given it would not have mattered [Doc. 45 p. 8–9; Doc. 53 p. 2–6].
Defendants' argument here actually bleeds into its next argument that Plaintiffs have
proffered no evidence that Dr. Matson's treatment decisions would have changed even had
he been adequately warned [Doc. 45 p. 10–11; Doc. 53 p. 2–6]. Dr. Matson's testimony,
however, when looked at in the light most favorable to Plaintiffs, reveals that he did utilize
the warnings provided by Defendants in the use of the TVT-O:

> Q When determining on when considering the risks of a procedure involving an implantation of a device, do you rely solely on information you get from the manufacturer, or do you also rely on your own education, training, and experience, and medical literature?
> A Also on the others.
> Q Okay. Would you ever rely solely on the information provided by the manufacturer and no other source?
> A Relying on what?
> Q To learn about what the potential risks are associated with the device?
> . . .
> A I would say quite often we listen to the manufacturer pretty regularly on the risks.
>
> . . .
>
> Q Prior to implanting the TVT-O device in [Christine], did you fully understand the TVT-O procedure?
> A Yes.
> Q Had you read the instructions for use on how to implant the product?
> A Yes. But I mean they are on those [training] slides we talked about before, so . . . .

[Matson Dep. 47:8-24, 68:18-69:7, Doc. 50-1]. At the very least, Dr, Matson had obtained
knowledge of the information contained in the instructions to the TVT-O in some way and
utilized that knowledge when treating Christine.

11

Defendants also argue that Plaintiffs have proffered no proof that Dr. Matson would have changed his treatment decision had he known about any additional warnings Plaintiffs suggest should have been given [Doc. 45 p. 10–11]. But even assuming Dr. Matson would have still recommended the use of the TVT-O, this does not mean that Christine would have gone through with its implantation. Indeed, Plaintiffs have identified at least one risk that Dr. Matson did not know of that he would have informed Christine about which would have changed her mind about going through with the procedure. [Doc. 50 p. 3–4; Matson Dep. 90:19-91:21, 94:18-95:3, 99:3-6, Doc. 50-1]. Specifically, Dr. Matson did not know that foreign body response to the implantation of the TVT-O could be lifelong. [Matson Dep. 99:3-6, Doc. 50-1]. Looking at Dr. Matson's testimony in the light most favorable to Christine, it appears that Dr. Matson would have informed Christine of this risk had he been informed of it:

> Q  [I]f you were to find out that there were additional risks associated with the TVT-O that are not associated with other implantation methods or devices, is that something that you would use to inform yourself about the product?
> A  To inform myself, yes.
> Q  After you informed yourself, that is something you would do, to discuss the risks and benefits with the patient that you're implanting the device on; is that right?
> A  It depends on what risks were in there. You said if there were new risks.
> Q  I said heightened risks. So additional risks to the TVT-O that are not available with other procedures.
> A  Right. And it is all hypothetical. So I am asking if I knew that they are heightened risks.
> Q  Yes. That is something you would take into account when using the TVT-O procedure?
> . . .

12

> A  Define the heightened risks. You are wanting me to make a hypothetical statement, if there's heightened risks, if there's this, would I – what heightened risks?
>
> . . .
>
> A  So I am just hypothetically saying if they were truly heightened risks, would we use it for our own information, and the answer is yes. . . .
>
> Q  I understand. Then if you found out the risks were heightened, you would explain that there were heightened risks with the TVT-O procedure to a patient like [Christine] before you implanted it in her?
>
> A  Yes.

[Matson Dep. 90:19-91:21, 94:18-95:3, Doc. 50-1]. Christine testified that had she known that any of the complications or risks associated with the TVT-O could be permanent, she would not have gone through with the implantation [Christine Dep. 138:24-139:3, Doc. 44-1].[2] Thus, Defendants' contention that Plaintiffs' claims predicated on a failure-to-warn theory should be dismissed is rejected because Plaintiffs have proffered "evidence that a warning would have altered the doctor's actions and that the change in the doctor's actions would have averted the patient's injury." *Payne*, 767 F.3d at 531.

Defendants also posit that Plaintiffs have presented no warranty, misrepresentation, or omission that was relied upon by Dr. Matson or Plaintiffs so as to maintain their fraud, fraudulent concealment, constructive fraud, breach of express warranty, and misrepresentation claims [Doc. 45 p. 15; Doc. 53 p. 11]. In response, Plaintiffs have identified several representations given in Defendants' instructions associated with the

---

[2] Defendants argue that Plaintiffs' failure-to-warn claims must fail because Plaintiffs have not shown that the injuries Plaintiffs claim should have been forewarned are the injuries that Christine actually experienced [Doc. 53 p. 4–5]. Defendants, however, have failed to recognize that one of the unknown problems associated with the TVT-O was the fact that the ailments Christine does suffer from, including "chronic foreign body reactions," are "permanent in nature," something that Dr. Matson did not know [Doc. 48-3 p. 5, 11; Matson Dep. 99:3-6, Doc. 50-1].

13

TVT-O as fraudulent [Doc. 50 p. 3 n.1; Doc. 48-3 p. 9]. These misrepresentations include that "the foreign body response was minimal, the pore size on the mesh was adequate, and that shrinkage and contraction associated with the implant would not affect clinical outcomes" [Doc. 50 p. 3]. In direct contrast to Defendants' assertions about the TVT-O, Plaintiffs' expert Dr. Rosenzweig identifies that the TVT-O's "pores are too small [and] degrade[] over time, caus[ing] chronic foreign body reactions" and that the use of Prolene in the TVT-O can "cause excessive shrinkage/contraction" [Doc. 48-3 p. 9]. Again, Dr. Matson's testimony, viewed in the light most favorable to Plaintiffs, suggests that he was familiar with the content of the TVT-O's instructions and "quite often" availed himself of those instructions. [Matson Dep. 47:8-24, 68:18-69:7, 90:19-91:21, 94:18-95:3, Doc. 50-1]. Defendants' argument that Plaintiffs have pointed to no warranties, misrepresentations, or omissions to support their claims is thus rejected.

### 4. Design Defect Theory

Defendants argue that Plaintiffs cannot maintain any claims based on design defect because Plaintiffs present no expert testimony on the issue of causation [Doc. 45 p. 11–12]. Plaintiffs have, however, pointed to the testimony of three (3) experts addressing this issue [Doc. 50 p. 5]. Indeed, one of Plaintiffs' experts, Dr. Rosenzweig,[3] stated in his report:

---

[3] Defendants have challenged Dr. Rosenzweig's ability to testify in this case [Doc. 48]. As explained below, however, it is unclear what effect the rulings of the MDL court have on Defendants' present challenge to Dr. Rosenzweig's testimony [Docs. 65, 66, 68]. Dr. Rosenzweig's opinions, therefore, will be considered for purposes of this motion.

14

> To a reasonable degree of medical certainty, the small pore, the heavy weight mesh, degradation over time, chronic foreign body reactions, fibrotic bridging, mesh contracture/shrinkage, fraying, particle loss, biofilm formation and infections, sharp edges, roping, curling and deformation, and the pore collapsing with tension of the TVT-O caused [Christine]'s vaginal pain, pelvic pain, pain with intercourse, and stress urinary incontinence.

[Doc. 50-3 p. 11].[4] Defendants' argument that "Plaintiffs have not identified a specific defect in the TVT-O that proximately caused [Christine]'s injury" is meritless, as Dr. Rosenzweig identified a variety of alleged defects in the TVT-O that caused Christine's ailments[5] [Doc. 45 p. 11]. Therefore, Plaintiffs' claims premised on design defect will not be dismissed.

### 5. Loss of Consortium

Finally, Defendants argue for the dismissal of Joseph's loss of consortium claim, but that argument assumes that Joseph's derivative loss of consortium claim fails because all of Plaintiffs' other claims fail. *See Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001) ("[L]oss of consortium is a derivative claim . . . in the sense that [a spouse]'s loss of consortium claim originates from [the other spouse]'s claim for his

---

[4] It is proper for a district court to rely on a nonmoving party's unsworn expert witness report proffered to rebut a party's motion for summary judgment. *See Davis v. United States*, 302 F. Supp. 3d 951, 956 (S.D. Ohio 2017) ("While it is true that [the expert's] opinion [report is] unsworn and would be inadmissible at trial in their present form, Defendant does not argue that the [report is] incapable of being presented in admissible form, as is currently required under Rule 56. Because the content of [the expert's] opinion [report] is fully capable of being reduced to admissible form, the Court finds [it] proper for consideration." (citations omitted)).

[5] To the extent Defendants take issue with the conclusory nature of Dr. Rosenzweig's opinions, this is an issue that should be addressed first in conjunction with a *Daubert* challenge which, as explained later, the Court cannot address at this time [Doc. 53 p. 7–9].

15

personal injuries." (citations omitted)). Because some of Christine's claims survive, Joseph may maintain his loss of consortium claim.

### B. Parties' Challenges to Expert Witnesses

While this case was still before the MDL court, Defendants moved to exclude the case-specific opinions of Plaintiffs' expert Dr. Rosenzweig, while Plaintiffs moved to exclude Defendants' expert Dr. Johnson [Docs. 48, 58]. The MDL Court issued memorandum opinions and orders regarding the parties' challenges to both Dr. Rosenzweig and Dr. Johnson [Docs. 65, 66, 68]. At this time, the Court is hesitant to address the parties' motions without the Court knowing of the impact, if any, of those memorandum opinions and orders on the parties' still-pending motions to exclude. As such, the Court will deny the motions with leave to refile with additional briefing addressing the impact, if any, that the MDL court's rulings have on their present expert witness challenges.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [Doc. 44] are **GRANTED IN PART** and **DENIED IN PART**. Counts II, IV, XIII, XV, XVII, and XVIII are **DISMISSED** with prejudice. All other claims survive. With respect to Defendants' motion to exclude Dr. Rosenzweig [Doc. 48] and Plaintiffs' motion to exclude Dr. Johnson [Doc. 58], the motions are **DENIED** with leave to refile with additional briefing as ordered herein. As some of Plaintiffs' claims are predicated on the

16

challenged expert witness testimony, the Court may allow Defendants to file another summary judgment motion when the outcome of the challenges is clearer.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
